Hubert LAWSON *v.* Charles L. DANIELS, Director of Labor, and DEPARTMENT OF COMMERCE LIVESTOCK & POULTRY COMMISSION

E 80-1                                           600 S.W. 2d 423
Court of Appeals of Arkansas
Opinion delivered June 4, 1980
Released for publication June 25, 1980

Appellant, *pro se*.

*Herrn Northcutt*, for appellees.

GEORGE HOWARD, JR., Judge. Appellant was denied unemployment benefits under Arkansas Employment Law, Ark. Stat. Ann. § 81-1106(a) (Repl. 1976), in that he left his last work voluntarily and without good cause in connection with the work.

Claimant was employed on September 21, 1979, at Barber, Arkansas, by the Arkansas Livestock and Poultry Commission, as a livestock inspector, in connection with the Commission's "brucellosis program" (the prevention and eradication of bangs disease in livestock) in a five county area — Scott, Logan, Sebastian, Crawford and Franklin Counties. Claimant was advised at the outset that he would be required "to go where the work was."

Upon accepting employment, claimant executed the following document entitled "Statement of Understanding":

"I, Hubert Lawson, Jr., upon accepting employment with the Arkansas Livestock and Poultry Commission, understand that the position I will occupy is federally funded and that the federal funds will be discontinued at the end of the fiscal year 1980, and this has been considered and accepted. When the federal funds are discontinued, the Arkansas Livestock and Poultry Commission is under no obligation to continue my employment, and *that my official station will be where my work assignment is located.*" (Emphasis added)

On November 28, 1979, claimant quit his job when he

was advised that the inspection program was being transferred to DeQueen, Arkansas.

Claimant testified:

REFEREE: Well, ah, did they offer you a job in DeQueen?

CLAIMANT: Ah, yes, they said I, if I would like to take the position and move down with them.

REFEREE: Well, why did you refuse it?

CLAIMANT: Well, it's a little over a hundred miles down there, and I couldn't just get up and move down there. I own a home in Barber, or Boothe, community. And, ah, I couldn't drive back and forth every day.

REFEREE: Well, did you sign an agreement that you would go wherever the work was?

CLAIMANT: Yes, I did.

REFEREE: So, actually the employer was not guilty of any breech in the hiring agreement. They had a job for you if you'd wanted to gone down there; is that correct?

CLAIMANT: Yes, yes, there was a job.

REFEREE: And what kind of a job would it have been, ah, the same thing you'd been doing?

CLAIMANT: Same type of work. Yes.

REFEREE: Well, how long do these jobs last? Do they, how long have you been doing this job?

CLAIMANT: I was with the state for six months, through this program.

Claimant admits that when he accepted the position of inspector, he accepted it "with the understanding that you

[he] would have to go where the work was." Moreover, claimant executed a written document expressly stating "my official station will be where my work assignment is located."

Dr. W. G. Swift, representative of the U.S. Department of Agriculture, Animal, Plant and Health Service, testified that as a matter of policy, employees of the "brucellosis program would have to go where the work is." The area which claimant was expected to make his services available involved essentially a five county area. What was expected of claimant and what claimant agreed to give was the usual and customary practice accompanying the occupation he sought and accepted. He executed a written contract agreeing that his work station would change periodically and would be determined by his work assignment.

While the Employment Security Law is to be liberally construed to accomplish its social purposes, we cannot in good conscience, permit these benevolent purposes to be frustrated by characterizing a claimant's voluntary unemployment as involuntary. This case does not involve any intervening and unforeseen circumstances of a compelling nature that would require us to reach a different conclusion. It is plain that claimant made a bargain with full knowledge of the consequences. He simply quit his job for personal reasons rather than for good cause connected with the work.

We hold that there is substantial evidence to support the deicsion of the Board of Review.

Affirmed.

NEWBERN, J., concurs.

DAVID NEWBERN, Judge, concurring. I reluctantly concur in the majority opinion. The record in this case is deficient. All we know about the contract between the claimant and the commission is the "statement of understanding" quoted in the majority's opinion. The testimony of Dr. Swift was that the program for which the claimant was hired covered a five-county area. The county to which the claimant was asked to move was not one of the five, and according to

his testimony, was 100 miles from his home. Without further knowledge of the terms of the contract, I find it most difficult to interpret that part of the "statement of understanding" which said "my official station will be where my work assignment is located." I can go along with this decision only because of the claimant's testimony that he understood he would have to move to any place the work might take him, but I cannot avoid feeling the understanding might have been that he could be required to work anywhere in the five-county area. Undoubtedly, had the claimant been represented by counsel this issue would have been developed further, but in view of the claimant's statement I cannot say there was no substantial evidence to support the result reached.